IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, AS SUCCESSOR-IN-INTEREST TO BANK OF AMERICA NATIONAL ASSOCIATION, AS TRUSTEE, AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-LDP8 c/o C-III Asset Management LLC 5221 N. O'Connor Boulevard, Suite 600 Irving, TX 75039 | |
|                          Plaintiff, | No. 13-cv- |
| v. | |
| MEYER ORBACH c/o The Orbach Group, LLC 707 Palisade Avenue 2nd Floor Englewood Cliffs, NJ 07632 | |
|                          Defendants. | |

**COMPLAINT**

1.      Plaintiff, U.S. Bank National Association, as trustee, as successor-in-interest to Bank of America National Association, as trustee, as successor by merger to LaSalle Bank National Association, as trustee, for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-LDP8 ("Plaintiff") by and through C-III Asset Management LLC, its special servicer and attorney-in-fact, is the trustee of a REMIC trust. Plaintiff is a national banking association organized under the National Bank Act, which exists under the authority of the Office of the Comptroller of the Currency, and is deemed to be a citizen of the State of Ohio with its principal place of business at

425 Walnut Street, Cincinnati, Ohio 45202-3923.  The main office of Plaintiff, as set forth in its articles of association, is located in the City of Cincinnati, County of Hamilton, State of Ohio.

2. Plaintiff is the successor trustee to Bank of America National Association, as trustee, as successor by merger to LaSalle Bank National Association, as Trustee, for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-LDP8  ("Bank of America").  Bank of America was the successor by assignment to Eurohypo AG, a New York Branch (the "Original Lender") in connection with the loan at issue in this action, as hereinafter defined.

3. Defendant Meyer Orbach ("Defendant" or "Orbach") is an individual with an address at c/o The Orbach Group, LLC, 707 Palisade Avenue, 2nd Floor, Englewood Cliffs, New Jersey 07632.

4. Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332 as there exists complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

5. Venue is proper in this District as a substantial portion of the events giving rise to this action occurred in the Commonwealth of Pennsylvania, the Guaranty contract at issue in this action is governed by the laws of the Commonwealth of Pennsylvania, the subject property underlying the Guaranty contract at issue in this case is situated in the Commonwealth of Pennsylvania.

**A.  The Loan**

6. On or about August 16, 2006, Original Lender and Lighthouse Whitehall Commons, LLC, a Pennsylvania limited liability company ("Borrower") entered into that certain

2

Loan Agreement (the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto and made a part hereof as Exhibit "A".

7. The Loan Agreement evidences a loan by Original Lender to Borrower in the amount of $4,440,000.00 (the "Loan").

8. On or about August 16, 2006, Borrower executed and delivered that certain Promissory Note (the "Note") to Original Lender to further evidence the terms of the Loan and Borrower's obligations to repay the Loan. A true and correct copy of the Note is attached hereto and made a part hereof as Exhibit "B".

9. To secure payment of the sums due under the Note, Borrower executed to Original Lender that certain Open-End Mortgage And Security Agreement (the "Mortgage") dated as of August 16, 2006, and thereby conveyed to it in fee, the land hereinafter described, with the Mortgage, having been first duly acknowledged and the certificate of acknowledgement duly endorsed thereon, recorded in the office of the Recorder of Deeds of Lehigh County, Pennsylvania (the "Recorder's Office") as Document Id. 7363855 on August 30, 2006. A true and correct copy of the Mortgage is attached hereto and made a part hereof as Exhibit "C".

10. The legal description of the mortgaged premises (the "Mortgaged Premises") located in Lehigh County is set forth on Exhibit "D" hereto. The address of the Mortgaged Premises is 3 Maryland Circle, Whitehall Township, Lehigh County, Pennsylvania.

11. To further secure payment of the sums due under the Note, Borrower entered into that certain Assignment Of Leases And Rents (the "Lease Assignment") dated as of August 16, 2006 and recorded in the Recorder's Office on August 30, 2006 as Document Id. 7363856. A true and correct copy of the Lease Assignment is attached hereto and made part hereof as Exhibit "E".

12. The Note is further secured by that certain that certain Guaranty of Recourse Obligations (the "Guaranty") dated as of August 16, 2006 and given by Defendant in favor of Original Lender.  A true and correct copy of the Guaranty is attached hereto and made a part hereof as Exhibit "F".

13. The Mortgage and the right to enforce the Guaranty and other security instruments were assigned to Bank of America pursuant to that certain Assignment of Open-End Mortgage and Security Agreement (the "First Assignment of Mortgage") dated as of August 16, 2006 and recorded on June 11, 2007 with the Recorder's Office as Document Id. 7422388.  A true and correct copy of the First Mortgage Assignment is attached hereto as Exhibit "G".

14. The Lease Assignment was assigned to Bank of America pursuant to that certain Assignment of Assignment of Leases and Rents (the "First Assignment of Lease Assignment") dated as of August 16, 2006 and recorded on June 11, 2007 with the Recorder's Office as Document Id. 7422378.  A true and correct copy of the First Assignment of Lease Assignment is attached hereto as Exhibit "H".

15. The Mortgage and the right to enforce the Guaranty and other security instruments were assigned to Plaintiff herein pursuant to that certain Assignment of Open-End Mortgage and Security Agreement (the "Second Assignment of Mortgage") effective as of January 1, 2011, dated June 17, 2011 and recorded on June 27, 2011 in the Recorder's Office as Document Id. 2011019755.  A true and correct copy of the Second Mortgage Assignment is attached hereto as Exhibit "I".

16. The Lease Assignment was assigned to Plaintiff herein pursuant to that certain Assignment of Assignment of Leases and Rents (the "Second Assignment of Lease Assignment") effective as of January 1, 2011, dated June 17, 2011 and recorded on June 27,

2011 in the Recorder's Office as Document Id. 2011019756.  A true and correct copy of the Second Assignment of Lease Assignment is attached hereto as Exhibit "J".

17. The Note, Mortgage, Lease Assignment, Guaranty, First Assignment of Mortgage, First Assignment of Lease Assignment, Second Assignment of Mortgage, Second Assignment of Lease Assignment and all other documents evidencing the Loan are sometimes referred to herein as the Loan Documents.

## B.  Borrower's Monetary Default under the Loan Documents/The Mortgage Foreclosure Action

18. Borrower defaulted on its obligations to Plaintiff by virtue of various events, including, without limitation, its failure to make certain payments due under the Loan Documents beginning on February 11, 2011.

19. Accordingly, Plaintiff declared the Loan in default in accordance with the terms of the Loan Documents and accelerated the sums due under the Loan Documents (collectively, the "Indebtedness").

20. On August 8, 2011, Plaintiff instituted mortgage foreclosure proceedings against Borrower by filing a Complaint in Mortgage Foreclosure in the United States District Court for the Eastern District of Pennsylvania (the "District Court"), docketed at No. 5:11-cv-05054-JKG (the "Foreclosure Action").

21. On September 28, 2012, the District Court entered an Order (the "Partial Judgment") in favor of the Plaintiff and against Borrower granting partial judgment to Plaintiff. A true and correct copy of the Partial Judgment is attached hereto as Exhibit "K".

22. On October 10, 2012, the District Court entered a Supplemental Judgment Order (the "Supplemental Judgment") in favor of the Plaintiff and against Borrower. A true and correct copy of the Supplemental Judgment is attached hereto as Exhibit "L".

23. The Supplemental Judgment authorized the United States Marshal (the "Marshal") to conduct the Foreclosure Sale, as defined below.

24. On March 7, 2013, at 11:00 P.M. EST, the Marshal conducted the foreclosure sale of the Mortgaged Premises (the "Foreclosure Sale").

25. Plaintiff was the successful bidder at the sale with a credit bid in the amount of Four Million Nine Hundred Fifty Thousand Dollars ($4,950,000.00).

## C.  Borrower's Additional Defaults Under the Loan Documents

26. Borrower defaulted under the terms of the Loan Documents by failing to remit all net cash flow from the Mortgaged Premises (the "Net Cash Flow") in accordance with the terms of the Mortgage and the Lease Assignment. Section 1.2 of the Mortgage provides that:

> Borrower hereby absolutely and unconditionally assigns to [Plaintiff] all Borrower's right, title, and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of the Assignment of Leases and Section 7.1(h) of this Security Instrument, [Plaintiff] grants to Borrower a revocable license to collect, receive, use and enjoy the Rents

27. Section 7.1(h) of the Mortgage provides that upon an event of default:

> the license granted to Borrower under Section 1.2 hereof shall be automatically revoked. . .

28. Section of 3.1 of the Lease Assignment provides that:

> Upon the occurrence of an Event of Default, the license granted to Borrower in Section 2.1 of this Agreement shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents and sums due under or arising from any Assigned Property, whether or not [Plaintiff] enters upon or takes control of the Property.

29. Despite the clear language of the Mortgage and the Lease Assignment, Borrower failed to turn over the Net Cash Flow from the Mortgaged Premises from the time of default on February 11, 2011 through the Foreclosure Sale on March 7, 2013.

30. In addition to failing to turn over the Net Cash Flow from February 11, 2011 to March 7, 2013, Borrower failed to turn over to Plaintiff all accounts associated with the Mortgaged Premises after the Foreclosure Sale.

31. Borrower also failed to turn over to Plaintiff all security deposits and last month's rent associated with the Mortgaged Premises after the foreclosure sale.

32. Upon information and belief, the total amount of security deposits held by Borrower at the time of the Foreclosure Sale is in excess of $50,000.00.

33. Upon information and belief, the total amount of last month's rent held by Borrower at the time of the Foreclosure Sale is in excess of $10,000.00.

34. Borrower also defaulted under the terms of the Loan Documents by failing to pay required real estate taxes and insurance premiums.

35. Pursuant to Section 4.1.2 of the Loan Agreement, Borrower was required to pay all taxes associated with the Mortgaged Premises.

36. Despite being required to do so under the Loan Documents, Borrower failed to pay real estate taxes in both 2011 and 2012, and Plaintiff had to advance the outstanding sums in order to protect its collateral.

37. In August, 2011, Plaintiff advanced $55,015.70 for unpaid real estate taxes.

38. In April, 2012, Plaintiff advanced $10,125.24 for unpaid real estate taxes.

39. In May, 2012, Plaintiff advanced $12,926.87 for unpaid real estate taxes.

40. Pursuant to Section 5.1.1 of the Loan Agreement, Borrower was also required to obtain and maintain insurance for the Mortgaged Premises.

41. Borrower failed to pay insurance premiums when due in May, 2011.

42. In May, 2011, Plaintiff had to transfer $3,180.41 from a tax impound account to an insurance impound account to pay insurance premiums not paid by Borrower.

## D.  Defendant's Liability under the Guaranty

43. Pursuant to Section 1.2 of the Guaranty, Defendant is personally liable to Plaintiff for the Guaranteed Obligations ("the "Guaranteed Obligations") enumerated in Section 11.22 of the Loan Agreement.

44. Section 11.22(v) of the Loan Agreement provides that Defendant shall be personally liable for "the misapplication of conversion by Borrower of. . . (B) any Rents following an Event of Default or any Rents collected for more than one month in advance . . ."

45. Therefore, Defendant is liable to Plaintiff for the total amount of Net Cash Flow from February 11, 2011 to March 7, 2013.

46. Section 11.22(vi) of the Loan Agreement provides that Defendant shall be personally liable for "any security deposits, advance deposits or any other deposits collected with respect to the Property which are not delivered to [Plaintiff] upon a foreclosure of the Property…"

47. Therefore, Defendant is liable to Plaintiff for the total amount of security deposits and last month's rents held by Borrower.

48. In addition, Defendant is liable to Plaintiff for all sums held by Borrower in any account associated with the Mortgaged Premises as of March 7, 2013.

49. Section 11.22(vii) of the Loan Agreement provides that Defendant shall be personally liable for "Borrower's failure to maintain insurance as required by this Agreement or to pay taxes or assessments affecting the property, in each case to the extent that Borrower failed to apply cash flow from the Property to do so."

50. Therefore, Defendant is liable to Plaintiff for all losses incurred as a result of Borrower's failure to pay real estate taxes and insurance premiums associated with the Mortgage Premises.

51. Section 11.22(viii) of the Loan Agreement provides that Defendant shall be personally liable for "damage or destruction to the Property caused by the acts or omissions of Borrower, its agents, employees or contractors."

52. Upon information and belief, the roof at the Mortgaged Premises was improperly maintained and neglected, causing excessive damage to many of the residential units located at the Mortgaged Premises.

53. To date, Plaintiff has spent in excess of $89,000 repairing the damaged roof and residential units.

54. Therefore, Defendant is liable to Plaintiff for the total cost of repairing all damage caused by Borrower's failure to properly maintain the roof.

55. Defendant is also liable to Plaintiff for all attorneys' fees associated with this action.

56. Section 1.8 provides that in the event that Defendant breaches the Guaranty, Defendant shall pay to Plaintiff "all costs and expenses (including court costs and attorneys'

fees) incurred by [Plaintiff] in the enforcement hereof or the preservation of [Plaintiff]'s rights hereunder."

57. Because Defendant is in breach of the Guaranty, Defendant is liable to Plaintiff for all costs and attorneys' fees associated with this action.

**Count 1 - Action on Indemnity and Guaranty Agreement**

58. Plaintiff incorporates herein by reference the allegations set forth above as fully as though the same were set forth herein at length.

59. Defendant executed the Guaranty for the purpose of guaranteeing Borrower's obligations under the Note and Mortgage.

60. Plaintiff is the current holder of the Guaranty.

61. The terms of the Guaranty provide that Defendant is personally liable to Plaintiff for any and all losses incurred by way of Borrower's misapplication or conversion of Net Cash Flow from the Mortgaged Premises after an Event of Default under the Note and Mortgage, and by way of Borrower's failure to pay real estate taxes and insurance premiums on the Mortgaged Premises.

62. The terms of the Guaranty further provide that Defendant is personally liable to Plaintiff for the amounts in all accounts associated with the Mortgaged Premises, including all security deposits and last month's rents, which were not turned over the Plaintiff after the Foreclosure Sale on March 7, 2013.

63. The terms of the Guaranty further provide that Defendant is personally liable to Plaintiff for all damage or destruction to the Property caused by the acts or omissions of Borrower.

64. Borrower failed to remit any Net Cash flow From the Mortgaged Premises after the January 11, 2011 and also failed to pay estate taxes and insurance premiums on the Mortgaged Premises.

65. Borrower failed to turn over any accounts, security deposits or last month's rent after the Foreclosure Sale on March 7, 2013.

66. Defendant Meyer Orbach is personally liable to Plaintiff for all Net Cash Flow from the Mortgaged Premises from the date of Borrower's default until March 7, 2013, the amounts in any and all accounts associated with the Mortgaged Premises as of March 7, 2013, the total amount of security deposits and last month's rent held by Borrower, for all losses incurred as a result of Borrower's failure to pay real estate taxes and insurance premiums associated with the Mortgage Premises, and for the cost of repairing all damage caused by Borrower's failure to properly maintain the roof.

67. Defendant Meyer Orbach is also personally liable to Plaintiff for all costs and attorneys' fees associated with this action.

WHEREFORE, Plaintiff, U.S. Bank National Association, as trustee, as successor-in-interest to Bank of America National Association, as trustee, as successor by merger to LaSalle Bank National Association, as trustee, for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-LDP8, hereby demands judgment in its favor and against the Defendant, Meyer Orbach, as follows:

A. Ordering that Defendant is liable to Plaintiff for all Net Cash Flow from the Mortgaged Premises from the date of Borrower's default under the Loan Documents until March 7, 2013;

B.     Ordering that Defendant is liable to Plaintiff for all security deposits paid to Borrower;

C.     Ordering that Defendant is liable to Plaintiff for all last month's rent paid to Borrower;

D.     Ordering that Defendant is liable to Plaintiff for the total amounts deposited into any account related to the Mortgaged Premises as of March 7, 2013;

E.     Ordering that Defendant is liable to Plaintiff for all losses incurred as a result of Borrower's failure to pay real estate taxes and insurance premiums associated with the Mortgage Premises;

F.     Ordering that Defendant is liable to Plaintiff for the total cost of repairing all damage caused by Borrower's failure to properly maintain the roof;

G.     Ordering that Defendant is liable to Plaintiff for all costs and attorneys' fees associated with this action;

H.     Entering Judgment and awarding Plaintiff money damages in an amount consistent with Defendant's liability as described above; and

I.     Ordering such other relief as this Honorable Court shall deem appropriate.

Dated: September 30, 2013

_____
Richard A. O'Halloran, Esquire
Alyson H. Ricker, Esquire
PA ID Nos. 41460/
Dinsmore & Shohl LLP
1200 Liberty Ridge Drive, Suite 310
Wayne, PA  19087
(610) 408-6020
Richard.Ohalloran@dinsmore.com
Alyson.Ricker@dinsmore.com